28396. UNIVERSAL LAUNDRY AND CLEANERS INC. *v.* GENERAL INSURANCE COMPANY OF AMERICA.

DECIDED NOVEMBER 27, 1940. REHEARING DENIED DECEMBER 17, 1940.

*H. F. Rawls, Colon J. Cogdell,* for plaintiff.

*Ringel & Ringel,* for defendant.

BROYLES, C. J. Universal Laundry & Cleaners Inc., hereinafter called the plaintiff, sued General Insurance Company of America, hereinafter called defendant, on a policy of fire insurance. A general demurrer to the amended petition was sustained, and the plaintiff excepted.

The original petition substantially alleges that the defendant owed the plaintiff $2100 as defendant's proportionate part of a $3500 loss accruing to plaintiff from the destruction by fire of a described flat-work ironer; and that plaintiff had complied with all the conditions of the policy. By an amendment a copy of the policy declared on was attached to the petition as an exhibit. On the back of the policy, and specifically made a part of it, are numerous provisions, one of which is that the "ascertainment or estimate [of loss] shall be made by the insured and this company, or, if they differ, then by appraisers, as hereinafter provided; and, the amount of loss or damage having thus been determined, the sum for which this company is liable . . shall be payable sixty days after due notice, ascertainment, estimate, and satisfactory proof of loss have been received by this company in accordance with the terms of this policy." Another of these provisions follows: "In the event of disagreement as to the amount of loss the same shall, as above provided, be ascertained by two competent and disinterested appraisers, the insured and this company each selecting one, and the two so chosen shall first select a competent and disinterested umpire; the appraisers together shall then estimate and appraise the loss, stating separately sound value and damage, and, failing to agree, shall submit their difference to the umpire; and the award in writing of any two shall determine the amount of such loss." Still another of these provisions is: "No suit or action on this policy,

for the recovery of any claim, shall be sustainable in any court of law or equity until after full compliance by the insured with all the foregoing requirements, nor unless commenced within twelve months next after the fire."

The petition was further amended by adding thereto paragraphs numbered 9, 10, and 11. Paragraph 9 is as follows: "Plaintiff shows that defendant has paid all damages done by said fire . . except to said flatwork ironer." Paragraph 10 substantially avers that "On or about May 4, 1939, plaintiff and defendant . . entered into an . . agreement to appraise the amount of loss and damage sustained by plaintiff to said flatwork ironer, . . a copy of said agreement . . being hereto attached and made a part hereof; that plaintiff and defendant each designated a representative to serve on said appraisal board and said appraisers, to wit, S. C. Kottmyer and Arthur W. Solomon Jr., agreed to participate and were actually qualified; . . that before entering upon their duties as such appraisers, they failed and refused to select and properly qualify an umpire, as specifically provided in said agreement to appraise, which provision reads as follows: 'Provided that said appraisers shall *first* select a competent and disinterested umpire;' that plaintiff then and there objected to said failure and omission on the part of said qualified appraisers on the ground that it was contrary to the conditions of said agreement, and said plaintiff then and there advised said two appraisers that it would not be bound by any appraisal or award made by them; and that the copy of said agreement . . shows on its face that said two appraisers 'selected' one 'Ed Diemmer' to act as umpire, although plaintiff alleges that neither of said appraisers requested the said 'Ed Diemmer' to act as such umpire, and he . . has never agreed to act in said capacity, nor was he qualified at any time as to his being a 'competent and disinterested' party, all as required by said . . agreement as a condition precedent to their entering upon their duties as appraisers." Paragraph 11 follows: "That plaintiff then and there made a demand on defendant to complete said appraisal in conformity with the agreement entered into as herein set out and defendant then and there refused and since said date has continually refused to complete same or to enter into any further agreement to appraise or arbitrate, as provided in said policy of insurance."

The "agreement for submission to appraisers" (attached to the

last amendment to the petition) provides that "said appraisers shall first select a competent and disinterested umpire, who shall act with them in matters of difference only;" that "the award of said appraisers and umpire (if the umpire be called upon to act), or any two of them, made in writing in accordance with this agreement, shall determine the amount of said loss and damage as provided in the policy;" that the appraisement provided for "is for the purpose of ascertaining and fixing the sound value of said property and the amount of said loss and damage only;" and that "the article . . on which the appraisal is to be made . . is one Schwab flatwork ironer" (which is fully described). This agreement is dated May 4, 1939, and signed by plaintiff and defendant. On the back of said agreement appears the following writing: "We, the undersigned, do hereby select and appoint Ed Diemmer as umpire, to decide upon matters of difference only, as provided in the within agreement. 5-9-1939. (signed) S. C. Kottmyer, Arthur W. Solomon Jr., appraisers."

It appears from another writing attached to said amendment that on May 9, 1939, said appraisers qualified under oath before a notary public to act as appraisers. There next appears the form of an oath for the umpire to take in order to qualify. This is neither dated nor signed by any one. Next appears the award of the appraisers finding the "sound value" of the flatwork ironer to be $1000, and "loss or damage, none." This award is signed by both of the duly-appointed appraisers, but does not anywhere show or indicate the date of its rendition.

This award was not a common-law award, but was a mere contractual method of ascertaining the loss. *National Fire Insurance Co.* v. *Shuman*, 44 *Ga. App.* 819 (2) (163 S. E. 306); *Ozburn* v. *National Union Fire Insurance Co.*, 45 *Ga. App.* 33, 38 (163 S. E. 321). The provision in the insurance contract relied on and pleaded by the plaintiff in error provides that the appraisers "shall first *select* a competent and disinterested umpire" (italics ours); *not that they shall first select and qualify such umpire.* Paragraph 10 of the amended petition avers that "plaintiff and defendant each designated a representative to serve on said appraisal board and said appraisers . . agreed to participate and were actually qualified." Certainly the oath of the appraisers was sufficient. We do not think the fact that it does not appear that either the "ap-

pointment of an umpire" or the award of the appraisers was sworn to is of itself sufficient to invalidate the award. The appraisers qualified to act as appraisers and appointed an umpire on the same day, to wit, May 9, 1939. It would appear to be a fair presumption that the appraisers did not render their award before they were qualified to act.

In Chandos v. American Fire Insurance Co., 84 Wis. 184, 198 (3) (54 N. W. 390, 19 L. R. A. 321), it was held that where a policy of fire insurance provides that if the parties can not agree as to the amount of the loss it shall be decided by appraisers, one to be selected by each party, the two so chosen to first select an umpire to act with them in case of their disagreement, it is immaterial whether the umpire is chosen before or after the disagreement arises. In the opinion appears this language: "The time when an act is to be done, either by contract or by the law, is not essential when it may as well be done later. . . The umpire here can act only after disagreement of the arbitrators. Until then an umpire is unnecessary. He can act as well, and with the same effect, if appointed when such contingency occurs. The time, therefore, fixed in the contract, is not essential or material."

While there was a waiver in the Chandos case, and none in the instant case, it is fairly deducible from the language used in the decision of the former case that, regardless of the waiver, the court considered the award good; and we are satisfied that the award in the instant case is valid and binding. This conclusion is reached with more assurance and certainty for the reason that the exhibits attached to the petition, in themselves, fail to show that the umpire was not *first* selected, and strongly indicate that the contrary is true. We therefore hold that the award was valid and that the court did not err in sustaining the general demurrer to the amended petition.

*Judgment affirmed. MacIntyre and Gardner, JJ., concur.*

### ON MOTION FOR REHEARING.

BROYLES, C. J. As pointed out by movant in the motion for rehearing, the award in this case was not a common-law award, as stated in our opinion, but was a mere contractual method of ascertaining the loss. And we have made this correction in our original opinion. However, under all the facts of the case we think that our holding that the award was a valid one is correct, although the award was a mere contractual method of ascertaining

the loss. The remaining grounds of the motion for rehearing are without substantial merit.

*Rehearing denied. MacIntyre and Gardner, JJ., concur.*