OPINION OF THE COURT
Michael D. Stallman, J.
Pursuant to CPLR 7504 and 9 USC § 5, petitioners seek appointment of an umpire (or a third arbitrator, as the case may be) to preside over arbitrations in accordance with three reinsurance treaties between petitioners and respondent. Respondent opposes the petition, and asserts, in the alternative, a “cross claim” requesting that any umpire (or third arbitrator, as the case may be) to be appointed be selected from among respondent’s list of individuals.
Background
Article XVII of Addendum No. 1 to Treaty No. 7532 states, in pertinent part:
“All disputes or differences arising out of this Agreement shall be submitted to the decision of two arbitrators, one to be chosen by each party and in the event of the arbitrators failing to agree, to the decision of an umpire to be chosen by the arbitrators. The arbitrators shall be executive officials of fire or casualty insurance or reinsurance companies. If either of the parties fails to appoint an arbitrator *186 within one month after being requested by the other party in writing to do so, or if the arbitrators fail to appoint an umpire, within one month of a request in writing by either of them to do so, such arbitrators or umpire, as the case may be, shall at the request of either party be appointed by a Justice of the Supreme Court of the State of New York.
“The Arbitration proceedings shall take place in New York, New York.” (Verified petition, exhibit C [emphasis supplied].)
Article XVI of Treaty Nos. 1897 and 2226 each state, in pertinent part,
“If any dispute shall arise between the Companies and the Reinsurers with reference to the interpretation of this Agreement or their rights with respect to any transactions involved, the dispute shall be referred to three arbitrators, one to be chosen by each party and the third by the two so chosen. If either party refuses or neglects to appoint an arbitrator within thirty days after the receipt of written notice from the other party requesting it to do so, the requesting party may nominate two arbitrators, who shall choose the third. . . . Any such arbitration shall take place in New York, NY unless some other location is mutually agreed upon by the Companies and the Reinsurers.” (Verified petition, exhibits A, B.)
Here, it is undisputed that petitioners appointed Thomas Stillman as their arbitrator, while respondent appointed John Aliare as its arbitrator. (Verified petition 1Í13; verified answer 1Í13.) It is also undisputed that the two arbitrators have not selected either an umpire or the third arbitrator in connection with the arbitrations that petitioners demanded. (Verified answer 1i 14.)
Discussion
CPLR 7504 states
“If the arbitration agreement does not provide for a method of appointment of an arbitrator, or if the agreed method fails or for any reason is not followed, or if an arbitrator fails to act and his successor has not been appointed, the court, on application of a party, shall appoint an arbitrator.”
Here, petitioners have demonstrated that, with respect to *187 Treaty Nos. 1897 and 2226, the parties’ agreed method of appointing the third arbitrator has failed.
The court rejects respondent’s argument that the appointment of the arbitrator by the court pursuant to CPLR 7504 is not permitted because it was not mentioned in the reinsurance treaties. “[A] contract generally incorporates the state of the law in existence at the time of its formation.” (Travelers Indem. Co. v Orange & Rockland Utils., Inc., 73 AD3d 576, 577 [1st Dept 2010].) Here, the mechanism of the court appointment of an arbitrator existed well before the formation of these reinsurance treaties, which appear to have been made in the mid-1970s. CPLR 7504, which was added in 1962 (L 1962, ch 308), follows section 1452 of the Civil Practice Act, which was added in 1937. Indeed, a similar argument was rejected in Matter of Delma Eng’g Corp. (K & L Constr. Co.) (6 AD2d 710 [2d Dept 1958], affd 5 NY2d 852 [1958] [court was empowered to fill a vacancy pursuant to Civil Practice Act § 1452]).
The court also rejects respondent’s argument that CPLR 7504 should not apply because petitioners are to blame for a breakdown in the selection of the umpire. This argument is unavailing because CPLR 7504 provides for the court appointment of an arbitrator “if the agreed method fails or for any reason is not followed” (emphasis supplied).
L
Petitioners urge the court to appoint the umpire or third arbitrator from among the three individuals that their arbitrator proposed to respondent’s arbitrator. Alternatively, petitioners propose that the court use a ranking method prescribed by ARIAS-U.S., which petitioners contend is a leading organization that sponsors and promotes arbitration as a method for resolving insurance and reinsurance disputes.[1]
Respondent urges the court to use the “strike and draw” method, which it claims is now the usual and customary procedure for umpire selection in the insurance industry.[2] Alterna *188 lively, respondent proposes that the court appoint the umpire (or third arbitrator, as the case may be) from among three individuals that respondent has named.[3]
CPLR 7504 does not set forth any substantive criteria for the appointment of the umpire or third arbitrator. Neither do the reinsurance treaties provide for a method of selection of the umpire or third arbitrator. Each side has essentially set forth arguments that its own method of selection is, under its own criteria, the better method. In Matter of Lexington Ins. Co. v Clearwater Ins. Co. (Sup Ct, NY County, Jan. 6, 2012, Feinman, J., index No. 651280/2011), Justice Feinman was similarly faced with the issue of the appointment of an umpire to preside over the arbitration of reinsurance disputes. Justice Feinman adopted the ranking method, but modified it to incorporate aspects of respondents’ proposed method.
This court is persuaded by Justice Feinman’s approach, i.e., to combine each proposed method, and therefore adopts it here, but with a slight modification. Justice Feinman recognized that, by combining the ranking method and the strike and draw method, a tie in the rankings might arise. Justice Feinman incorporated the element of chance from the strike and draw method used to break the tie, i.e., a coin toss. However, Justice Feinman indicated that the winner of the coin toss would appoint the umpire. There is a subtle difference between breaking a tie among two possible selections with a coin toss versus granting the winner of the coin toss the unilateral right of appointment, although the two methods may be, as a practical matter, functionally equivalent. Under the latter method (chosen by Justice Feinman), the element of chance is removed from the selection of the umpire by one degree. That is, the element of chance does not directly determine the umpire; rather, the winner of the coin toss chooses the umpire. To be faithful to the direct role of the element of chance in the strike and draw method, the umpire (or third arbitrator) must be drawn by random lot in the event of a tie in the rankings of the umpire (or third arbitrator).
*189 Therefore, the petition is granted to the extent that the third arbitrator of the arbitrations to be had pursuant to Treaty Nos. 1897 and 2226 shall be appointed, in accordance with the method set forth in the last decretal paragraph of this decision, order, and judgment.
IL
As to Treaty No. 7532, respondent argues that a full arbitration must be held before two arbitrators before an umpire is selected. Respondent reasons that an umpire need not be selected unless the two appointed arbitrators fail to agree as to the resolution of the parties’ dispute or differences.
Case law recognizes a difference between the authority of an umpire and that of a third arbitrator. Unlike a third arbitrator, the umpire’s authority may be limited solely to issues where the arbitrators disagreed, in which case the umpire’s authority is binding. (See Matter of Petroleum Cargo Carriers [Unitas, Inc.], 31 Misc 2d 222, 228 [Sup Ct, NY County 1961].) The issue presented is whether the umpire may be appointed before a disagreement among the arbitrators arises, and thus whether the umpire may be appointed and be present at the hearing before the arbitrators. The two Supreme Court cases that petitioners and respondent cite reached different conclusions on this issue.
In Matter of Lexington Ins. Co. v Odyssey Am. Reins. Corp. (Sup Ct, NY County, June 28, 2011, Kornreich, J., index No. 651033/2011), cited by petitioners, Justice Kornreich rejected the notion that the umpire may not be chosen to be present at the insurance arbitration to be held before the arbitrators appointed by each side. On the record, she stated,
“You know, what I found odd here, because I have seen other arbitration agreements where there is a third arbitrator, is that this arbitrator is called an umpire, just like in baseball.
“And usually why you have an umpire is to call — in baseball he calls them strikes, to make decisions as to whether someone is safe on base. . . . How can an umpire make those decisions if there is no umpire? . . .
“And that the order of the Court is — first of all, that my interpretation of this clause is that the umpire — and the definition of umpire I think is clear to us all — should be there to umpire during whatever arbitral hearing takes place.” (Goldsmith reply affirmation, exhibit A at 21, 41.)
*190 Matter of Grainger (Shea Enters.) (7 Misc 2d 322, 323 [Sup Ct, NY County 1957]), cited by respondent, reached a contrary result. There, the arbitration clause stated, “and if the two arbitrators do not agree then a third or umpire shall be appointed by the two.” Justice Dineen denied petitioner’s cross motion for an order directing the two arbitrators to appoint an umpire, reasoning,
“Pursuant to the arbitration clause an umpire may be appointed by the arbitrators in the event of a disagreement between them. No disagreement between the arbitrators is alleged nor does there appear to be any at this time. The court can neither anticipate that the two arbitrators will be in accord with each other nor assume that they will disagree. Until such time that the arbitrators disagree the arbitration clause cannot be invoked for the purpose of appointing an umpire. The contention of the petitioners that an umpire should be appointed at the very outset to avoid a rehearing and duplication of proceedings in the event the two arbitrators disagree is untenable in view of the language used in the arbitration clause.” (Id. at 323-324.)
Justice Kornreich’s interpretation is the more practical approach. Following respondent’s logic, an umpire might not be chosen until after the close of the arbitration. Selecting an umpire before the arbitration commences avoids the additional expense of having to conduct more than one arbitration in the event of a disagreement between the arbitrators. In addition, the umpire would see the proof as it is presented before the arbitrators.
The use of an umpire at arbitrations can be seen in cases dating as far back as the nineteenth century (see e.g. Enright v Montauk Fire Ins. Co., 15 NYS 893 [1891]). It is not surprising that New York courts and courts of other jurisdictions have considered the issue presented long ago. Those decisions are instructive here, even though the cases did not involve reinsurance agreements.
In 1806, the court held in McKinstry v Solomons,
“The arbitrators may elect an umpire, within the time prescribed for them to make an award, and even before they take upon themselves the matter submitted. It is not even requisite, that the arbitrators should have acted in the matter, and made an effort to agree, in order to give validity to the pow *191 ers of the umpire.” (2 Johns 57 [1806] [emphasis supplied and citation omitted].)
In Van Cortlandt v Underhill (17 Johns 405 [1819]), the court rejected the argument that the arbitrators had to defer the choice of an umpire until a disagreement arose between them. The court ruled,
“The objection to the choice of an umpire, if it were true, that the two persons first chosen had not differed in opinion, is equally untenable. It is well settled, that arbitrators may nominate an umpire before they proceed to the consideration of the subject submitted, and it is the fairest way of choosing an umpire.” (Id. [emphasis supplied]; see also City of New York v Butler, 1 Barb 325 [Sup Ct, NY County 1847] [“It is objected by the defendant in error, that the selection of an umpire by the appraisers appointed by the parties was premature. . . . However, the authorities are against the objection, and we are bound to overrule it”], affd 4 How Prac 446 [1850].)
In Leonard v Cox, the Supreme Court of Missouri held, “It is well settled in cases of submission providing for the selection of an umpire in the event of a disagreement of the arbitrators, that the arbitrators may select an umpire even before they enter upon the consideration of the subjects submitted.” (64 Mo 32 [1876].) In Universal Laundry & Cleaners v General Ins. Co. of Am. (64 Ga App 68, 71, 12 SE2d 181, 183 [1940]), a Georgia Court of Appeals held “it is immaterial whether the umpire is chosen before or after the disagreement arises,” citing Chandos v American Fire Ins. Co. (84 Wis 184, 198, 54 NW 390, 394 [1893]). In Stevens v Brown (82 NC 460, 461 [1880]), the Supreme Court of North Carolina stated,
“It matters not at what time during the progress of an arbitration the umpire is appointed. It is within the discretion of the arbitrators to appoint him before or after their disagreement. Where a submission to the award of two persons authorized the appointment of an umpire by them, if they disagree, it was held they might choose an umpire before they entered upon the inquiry.” (Id. at 461 [citation omitted].)
If the court were to assume, for the sake of argument, that the arbitrators’ disagreement is a condition precedent to the court appointment of an umpire, that disagreement need not be on the merits of the claims to be arbitrated. (See Encyclopaedia Universalis S.A. v Encyclopaedia Britannica, Inc., 403 F3d 85 *192 [2d Cir 2005].) Encyclopaedia Universalis S.A. concerned the confirmation of an arbitration award under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards. The parties’ arbitration agreement provided that “In the event of disagreement between these two arbitrators, they shall choose a third arbitrator who will constitute with them the Board of Arbitration.” (Id. at 87 n 1.) In addressing whether the Board of Arbitration was improperly composed, the United States Court of Appeals for the Second Circuit stated,
“We agree with the District Court that the parties’ agreement contains three requirements: (1) the arbitrators must ‘disagree’ before appointing a third arbitrator; (2) the two party-appointed arbitrators must attempt to choose a third arbitrator; and (3) upon the failure of the two party-appointed arbitrators to agree on a third, the Tribunal must appoint one from the Chamber’s list. Here, the first requirement was met because the arbitrators disagreed about the procedural rules to be applied to the proceedings. We reject EB’s contention that Layton and Danziger were required to disagree as to the merits of the case. Nothing in the language of the Two Party Agreement limits the subject of qualifying disagreements.” (Id. at 90-91 [emphasis supplied and citation omitted].)
Here, nothing in the language of Treaty No. 7532 limits the subject of the disagreements of the arbitrator to the merits of the claims to be arbitrated.
Given Justice Kornreich’s reasoning in Lexington Ins. Co., the early New York cases and the authorities in other jurisdictions, the court disagrees with respondent’s argument that, with respect to Treaty No. 7532, appointment of the umpire is premature, i.e., that the umpire may be appointed only after a disagreement arises between the two arbitrators during the course of the arbitration.
m.
Respondent’s remaining arguments are without merit. Petitioners have demonstrated that, with respect to Treaty No. 7532, petitioners’ arbitrator made a written request for the selection of an umpire on April 19, 2012, more than a month before this petition was brought on August 31, 2012. (Stillman aff U 4; exhibit A.)
Therefore, the petition is also granted to the extent that the umpire of the arbitration to be had pursuant to Treaty No. *193 7532 shall be also appointed, in accordance with the method set forth in this court’s decision.
Respondent’s concern that appointment of the umpire/third arbitrator amounts to de facto consolidation of the arbitrations is misplaced. The parties themselves have apparently appointed the same arbitrators for the arbitrations to be held in accordance with the three reinsurance treaties. Nothing in this order should be read as consolidating those arbitrations. The fact that the method of appointing the umpire and third arbitrator is the same method for all arbitrations does not amount to consolidation of the arbitrations.
Conclusion
Accordingly, it is hereby adjudged that this petition is granted in part, to the extent that an umpire (or third arbitrator, as the case may be) shall be appointed in the manner set forth in this decision, and the petition is otherwise denied; and it is further adjudged that respondent’s cross claim to appoint either Messrs. James Powers, Klaus Kunze or Timothy McCafferty to serve either as an umpire or third arbitrator is denied and dismissed; and it is further ordered that, for each arbitration to be heard, the umpire (or third arbitrator) shall be chosen within 60 days as follows:
1. Each side’s appointed arbitrator shall nominate a slate of five candidates;
2. Each side then may strike three of the five candidates on the other’s list;
3. Each side shall rank the remaining candidates in order of preference;
4. The candidate with the highest cumulative ranking shall be appointed the umpire;
5. If the individual with the highest cumulative ranking is unavailable or unwilling to serve as umpire, the individual with the next highest cumulative ranking shall be appointed as the umpire (or third arbitrator, as the case may be);
6. If there is a tie for the highest cumulative ranking, the umpire (or third arbitrator, as the case may be) will be drawn by random lot. With respect to the arbitration to be had pursuant to reinsurance treaty number 7532, the candidates nominated to be an umpire must be disinterested, active (i.e., not retired) executive officials of fire or casualty insurance or reinsurance companies.

. Petitioners state that, under the ARIAS-U.S. ranking method, each side names five nominees, and each side then selects three of the other side’s nominees (i.e., strikes the names of two nominees). Both sides then rank the six remaining names in order of preference, and the nominee with the highest cumulative ranking becomes the umpire. (Mem at 9.)

. Respondent’s arbitrator states that, under the strike and draw method, each side would nominate candidates, and then each side could strike two of the candidates nominated by each side. Then the umpire (or third arbitrator, *188 as the case may be) would be chosen by random lot from the two remaining candidates. (Allare aff ¶ 6.) According to petitioners’ arbitrator, the umpire would be selected by a coin toss from the names remaining. (Stillman aff ¶ 10.)

. Unlike petitioners, respondent does not seek the appointment of the same person to preside over all the arbitrations as the umpire or third arbitrator. Rather, for each arbitration, respondent asks that the court appoint the umpire or third arbitrator from among respondent’s pool of candidates.